UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REBECCA B., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 23 C 295 <br><br> Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rebecca B. seeks to reverse the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB"). The Commissioner moves for summary judgment seeking to affirm the decision to deny benefits. For the reason stated herein, Plaintiff's motion for summary judgment requesting reversal and remand of the decision of the Commissioner is granted in part and the Commissioner's motion for summary judgment is denied.

**BACKGROUND**

Rebecca applied for DIB on October 15, 2020, alleging that she became disabled on February 28, 2020 due to severe arthritis in neck and back, degenerative disc and joint disease in back, osteoporosis, Raynaud's (numbing of hands and feet), narcolepsy, migraines (ice pick headaches), fibromyalgia, chronic fatigue syndrome, patellar tendonitis, lateral epicondylitis, chronic vain insufficiency, gastroesophageal reflux disease ("GERD"), rotator cuff tenonitis, blindness in one eye, psoriasis, and esophagitis. She has a past psychiatric history of depression, anxiety, and ADHD, and also alleges chronic pain and fatigue. Rebecca underwent lumbosacral spinal fusion on November 17, 2021. Born on January 7, 1978, Rebecca was 42 years old as of

the alleged onset date. Rebecca graduated from high school and had an Individualized Education Plan where she received extra time to take tests. Rebecca has past work experience as a secretary and a dog walker.

The administrative law judge ("ALJ") issued her decision denying Rebecca's application on April 6, 2022. (R. 16-35). The ALJ concluded that Rebecca's fibromyalgia, degenerative disc disease of the cervical and lumbar spine, osteoarthritis of the knees, bursitis of the shoulders, peripheral vascular disease, psoriasis, and migraine and other headaches were severe impairments but did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 19, 23-24. The ALJ found Rebecca's GERD, osteopenia, Raynaud's disease, hypersomnia, depression, and anxiety to be non-severe. *Id*. at 19-21. Under the "paragraph B" analysis, the ALJ found that Rebecca had mild limitations in the four functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. *Id*. at 21 The ALJ also determined that Rebecca's lateral epicondylitis, right knee pain, right hip pain, right wrist pain, left foot pain, chest pain, left thumb pain, diarrhea, peripheral neuropathy, and blindness in one eye were nonmedically determinable impairments. *Id*. at 22-23.

The ALJ then assessed that Rebecca had the residual functional capacity ("RFC") to perform sedentary work except: (1) no climbing ladders, ropes, or scaffolds; (2) occasional climbing of ramps/stairs; (3) occasional balancing, stooping, kneeling, crouching and crawling; (4) frequent reaching, pushing and pulling with the upper extremities bilaterally; (5) frequent handling, fingering, feeling bilaterally; (6) frequent pushing/pulling foot controls bilaterally; (7) work in an indoor temperature controlled work environment; (8) should avoid exposure to extreme temperatures; and (9) should avoid work around hazards, unprotected heights and moving

dangerous machinery. (R. 25-33). Given this RFC and the testimony of the vocational expert ("VE"), the ALJ concluded that Rebecca is able to perform her past relevant work as a secretary as generally performed. *Id*. at 33-35. The ALJ therefore found Rebecca not disabled. *Id*. at 35.

## **DISCUSSION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ---, 139 S.Ct. 1148, 1154, (2019) (quotation marks omitted). In reviewing

an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Rebecca raises three arguments in support of reversal: (1) the ALJ failed to accommodate all limitations arising out of her combined impairments in the RFC assessment, including specifically her mental limitations; (2) the ALJ improperly discredited her statements regarding her limitations; and (3) the ALJ failed to support her decision to discount the opinions of her treating dermatologist and rheumatologist. Since the Court agrees that the ALJ's analysis fails to show that she considered the combined impact of Rebecca's non-severe depression and anxiety with her other severe and non-severe physical impairments on her ability to perform her past relevant work as a secretary, the Court does not reach her second and third arguments.

Rebecca disagrees with the ALJ's decision about her mental capabilities. She contends that the ALJ failed to consider the combined effects of her mental impairments with her numerous severe physical impairments, including fibromyalgia, migraine headaches, and a variety of musculoskeletal impairments resulting in fatigue and chronic pain, and failed to include non-exertional limitations in the RFC to accommodate her mental impairments. "When determining a claimant's residual capacity to work, the ALJ must consider in combination all limitations on a claimant's ability to work, including those that are not individually severe." *Krug v. Saul*, 846 F. App'x 403, 406 (7th Cir. 2021); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). While a non-severe impairment standing alone may not significantly limit an individual's ability to work, it "may—when considered with limitations or restrictions due to other impairments—be critical to

4

the outcome of a claim." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). An ALJ's "failure to fully consider the impact of non-severe impairments requires reversal." *Denton*, 596 F.3d at 423.

At the hearing, Rebecca testified that she has been treated for anxiety and depression. (R. 70-72). She was prescribed amitriptyline for depression and pain but stated she stopped taking the medication because it was not working. *Id*. at 70, 1238. At step two, the ALJ noted Rebecca's mental impairments of depression and anxiety. *Id*. at 21. Contrary to the opinions of the state agency psychological consultants, the ALJ concluded that Rebecca's mental impairments were non-severe and further that she had mild limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. *Id*. In reaching her step two conclusion, the ALJ noted: Rebecca worked after her alleged onset date; her daily activities appear to be mostly impacted by her physical rather than mental limitations; she has received minimal treatment for mental health difficulties; and she presented with irritable and anxious mood at times, but she was logical and demonstrated coherent thought process, intact memory, good attention and concentration, and normal judgment; she did not report that her medical conditions affected her ability to get along with others; she is able to interact appropriately with her many medical treatment providers; and she can manage her own personal care activities, prepare meals, do some household chores, drive a car, go out alone and manage her finances. *Id*. at 20-21. Despite these abilities, the ALJ found that Rebecca has mild limitations in all four areas of mental functioning. *Id*.

At the end of her step two analysis, the ALJ recognized that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3" and that the mental RFC assessment "used at steps 4 and 5 . . . requires a more detailed assessment." (R. 22); *see* SSR 96-8p, 1996 WL 374184,

5

at *4. The ALJ then stated that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (R. 22). However, when assessing the RFC, the ALJ provided no additional analysis of Rebecca's depression and anxiety, alone or in combination with her other impairments. Specifically, the ALJ did not mention Rebecca's mild mental limitations in formulating the RFC or explain how her depression and anxiety would have impacted her limitations on their own or in combination with her other impairments, most notably her pain and fatigue issues. *Id*. at 25-33. Nor did the ALJ include any mental non-exertional restrictions in her RFC assessment or explain why she omitted any such restrictions. The lack of any discussion is despite the fact that in connection with the paragraph B analysis, the ALJ acknowledged some limitations in mental functioning. *Id*. at 21 ("The claimant reported that medical conditions affect her ability to understand and remember."); *id*. ("The claimant reported that she needs reminders to take medicine."); *id*. ("The claimant reported that medical conditions affect her ability to concentrate and complete tasks."); *id*. ("The claimant reported that she has problems handling stress and changes in routine.").

The ALJ's failure to include any discussion of Rebecca's non-severe mental limitations in the RFC analysis is error. *Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013) ("After a 'not severe' finding at step two," the ALJ must "assess the mental impairment in conjunction with the individual's RFC at step four."); *Judy D. v. Saul*, 2019 WL 3805592, at *4 (N.D. Ill. Aug. 13, 2019) (internal citation and quotation marks omitted) ("Although a mild limitation in an area of mental functioning does not necessarily prevent an individual from securing gainful employment, the ALJ must still affirmatively evaluate the effect of that limitation on the claimant's RFC."). "Time and time again, courts in this District have remanded ALJ opinions identifying non-severe mental impairments at step two that disappear without explanation when it comes time to craft the

6

RFC before step four." *Dianne O. v. Kijakazi*, 2023 WL 3864589, at *4 (N.D. Ill. June 7, 2023).[1] The ALJ did not discuss Rebecca's non-severe mental impairments and mild limitations she found in formulating the RFC and thus, the Court cannot now assess whether the failure to include any non-exertional limitations in the RFC is supported by substantial evidence.

Moreover, the ALJ did not, either in the paragraph B analysis or the RFC assessment, consider the combined impact of Rebecca's depression and anxiety with her other severe and non-severe physical impairments. This was also error because an ALJ must "consider the *aggregate* effect of [a claimant's] ailments." *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000) (emphasis in original); *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."). As a corollary, the ALJ was required to explain the aggregate impact that Rebecca's limitations in all four areas of mental functioning have when considered together with her severe physical impairments and limitations. *Muzzarelli v. Astrue*, 2011 WL 5873793, at *24 (N.D. Ill. Nov. 18, 2011) (remanding where "[t]he ALJ gave no indication in either Step 2 or in the RFC

---

[1] *See also Milton B. v. Kijakazi*, 2023 WL 4134812, at *7 (N.D. Ill. June 22, 2023) (remanding where "the ALJ failed to mention his finding that Claimant had mild limitations in his ability to understand, remember, or apply information and to concentrate, persist, or maintain pace in his discussion of his RFC assessment" or "provide any explanation as to why he failed to include any non-exertional limitations in the RFC to address [plaintiff's] mild mental limitations."); *Dianne O.*, 2023 WL 3864589, at *4 (remanding where "the ALJ determined at step two that Plaintiff had non-severe mental impairments that warranted a mild limitation in adapting or managing herself, but the ALJ failed to discuss or even mention Plaintiff's mild mental limitation in crafting the RFC."); *Brenda R. v. Kijakazi*, 2023 WL 3689458, at *6 (N.D. Ill. May 26, 2023) (remanding where "the ALJ made no mention in his RFC assessment of his own findings that Claimant has mild limitations in her ability to concentrate, persist, or maintain pace; interact with others; and adapt and manage herself, nor did he sufficiently explain why he did not include any such limitations. The ALJ's failure to do so is particularly troubling here where the determination of non-disability was based on the ALJ's finding at step four that Claimant had the ability to perform her past skilled work as department manager); *Thomas D. v. Kijakazi*, 605 F. Supp. 3d 1063, 1068 (N.D. Ill. 2022) (remanding where "the ALJ failed to account for the mild functional limitations caused by the mental impairments in forming the RFC" and "failed to explain why the limitations he found credible at step two would not impact [Plaintiff's] ability to work.").

analysis that he considered what impact [claimant's] mild functional limitations might have when considered in tandem with her severe physical impairments."). Thus, the ALJ failed to build a logical bridge between the combined impact of Rebecca's mental impairments with her physical impairments and her RFC assessment which included no work-related non-exertional limitations. Without an explanation from the ALJ of her consideration of Rebecca's mental impairments in combination with her other severe and non-severe impairments in the RFC, the Court cannot determine whether the ALJ's RFC decision is supported by substantial evidence.[2]

Furthermore, the record contains medical opinion evidence indicating that Rebecca requires workplace limitations because of her mental impairments. Thomas VanHoose, Ph.D., and Jeanne Yakin, Ph.D., the state agency psychologists who reviewed Rebecca's record in April and July 2021, respectively, found that Rebecca's mental impairments were severe and she had moderate limitations in the four areas of mental functioning. (R. 94-95, 113). The state agency psychologists also assessed Rebecca's mental RFC. Dr. VanHoose concluded that Rebecca is capable of performing simple repetitive tasks in a routine work environment with limited public contact. *Id*. at 105. On reconsideration, Dr. Yakin determined that Rebecca is capable of: (1) performing 1-2 step tasks and can concentrate sufficiently to complete these kinds of tasks; (2) interacting with others sufficiently in a work setting with reduced social demands but could not work with the general public on an ongoing, continuous basis; and (3) adapting to simple, routine changes and pressures in the workplace. *Id*. at 118. In concluding that Rebecca's mental

---

[2] The Commissioner relies on *Felts v. Saul*, 797 F. App'x 266, 269 (7th Cir. 2019), where the Seventh Circuit rejected the claimant's argument that the ALJ failed in her RFC analysis to assess the cumulative effect of his non-severe depression and concentration problems with his severe physical impairments. *Felts* is distinguishable because in that case the ALJ "did consider these problems in combination" in her RFC analysis. *Id.* The ALJ's RFC analysis showed that she focused on Felts' physical impairments but also that she considered his reported concentration problems after finding them mild at step two. *Id.* at 268, 269-70. Here, nowhere in her decision does the ALJ discuss or analyze the combined effect of all of Rebecca's impairments on her ability to work.

impairments were non-severe, the ALJ found "not persuasive" the opinions of the state agency psychologists for three reasons: (1) the objective medical evidence establishes largely unremarkable findings on mental status examination; (2) the claimant is independent in her activities of daily living any limitations in her daily functioning are related to physical rather than psychological impairments; and (3) the claimant is not taking any medications to treat depression or anxiety and has had minimal health treatment. *Id*. at 22.

There are a number of problems with the ALJ's reasons. *First*, although an ALJ need not mention every piece of evidence, "[a]n ALJ 'cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a finding of disability.'" *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (quoting *Denton*, 596 F.3d at 425). In considering mostly unremarkable findings on Rebecca's mental status exams, the ALJ failed to acknowledge other, abnormal findings on those examinations. (R. 21). For example, the ALJ explicitly cited Rebecca's irritable mood and coherent thought process on mental status exam on October 30, 2019, but she failed to mention the findings reflected in the remainder of the mental status examination, including: in moderate distress; increased rate of speech described as non-stop and hyperverbal; restless, fidgety and hyperactive; anxious and agitated; and fair insight. *Id*. at 21, 706-07. Other evidence showed abnormal findings on mental status examinations. On November 10, 2020, Lisa Page, Psy.D., LCPC, performed a mental status exam which showed Rebecca had poor insight and judgment, her affect was constricted, her mood was depressed, and she was diagnosed with an anxiety disorder due to another medical condition. *Id*. at 1230-31. Moreover, on December 15, 2020, Rebecca was assessed to have "moderately high level of depressive symptoms" and "probably suffering from several somatic symptoms associated with depression, such as fatigue, loss of energy, inefficiency, or an inability to concentrate." *Id*. at 1243. A week later, Rebecca

9

complained of intermittent pain on a consistent basis, and Dr. Page noted that Rebecca "is dysphoric; her affect is flat. She has poor insight and a helpless attitude." *Id*. at 1250. The ALJ did not address this evidence or sufficiently explain how this evidence, which the state agency psychologists specifically considered, failed to support their opinions. *Id*. at 95-96, 112-13.

*Second*, the ALJ found Rebecca is "independent in her activities of daily living" and thought this was inconsistent with the moderate limitations in mental functioning and mental RFC findings assessed by the state agency psychological consultants. (R. 22). However, the ALJ did not identify what specific activities were inconsistent with or not support by the state agency psychologists' opinions. While earlier in the decision, the ALJ noted that Rebecca can manage her own personal care activities, prepare meals, do some household chores, drive a car, go out alone, and manage her finances, she did not explain how any of those cited activities undercut the specific moderate limitations in mental functioning and mental RFC assessed by the state agency psychologists. *Id*. at 21. The ALJ's failure to explain the nature of the alleged conflict was error. *Burgos v. Saul*, 788 F. App'x 1027, 1031 (7th Cir. 2019) ("we have repeatedly underscored the necessity of the ALJ articulating why a claimant's daily activities undermine a physician's opinion and to avoid inferring an ability to do full-time work from a claimant's occasional activities."); *Clifford*, 227 F.3d at 870 (The Seventh Circuit has "repeatedly stated . . . that an ALJ must 'minimally articulate his reasons for crediting or rejecting evidence of disability,'" and reversing where the ALJ did "not provide any explanation for his belief that [the claimant's] activities were inconsistent with [a medical] opinion.") (internal citations omitted).

The Court is also not convinced by the next reason the ALJ gave for rejecting the state agency psychologists' opinions—that the opinions are unpersuasive because "any limitations in her daily functioning are related to physical rather than psychological impairments." (R. 22). The

10

record does not support the ALJ's conclusion that Rebecca's limitations in performing daily activities are related solely to her physical rather than psychological impairments. Although the ALJ cites generally to Rebecca's Function Report from December 2, 2020 and her hearing testimony in support of her conclusion, she ignores contradictory evidence without acknowledgement or explanation. For example, the ALJ's own prior findings acknowledge that Rebecca reported in her December 2020 Function Report that her medical conditions affect her ability to understand, remember, concentration, complete tasks, she needs reminders to take her medicine, and she has problems handling stress and changes in routine. *Id*. at 21, 276. The ALJ overlooks this evidence and makes no attempt to explain why the December 2020 Function Report does not constitute evidence Rebecca has limitations in her daily functioning related to psychological impairments. As the state agency psychologists noted, Rebecca asserts "[e]ssentially global limitations in physical and mental activities" in her December 2020 Function Report. *Id*. at 95, 114. Moreover, the ALJ did not acknowledge that in her Function Report, Rebecca stated she is "depressed and [has] anxiety," she can pay attention for 15 to 20 minutes, she does not finish what she starts, she makes lists every day, she has to reread written instructions several times, she has be told spoken instructions several times, and she does not handle stress well due to her anxiety. *Id*. at 275-77; *see also* 298-99. Likewise, the ALJ did not address Rebecca's testimony about how her mental impairments impact her functioning. Rebecca testified that her depression and anxiety affect her memory and concentration: "I have to have things read to me. I have to have things told to me several times. I have to do things over and over again because I forget how to do things . . . I have to make a list of things to do every day or else I forget to do them." *Id*. at 72. She also testified that she experiences anxiety attacks about three times a week that last about ten minutes. *Id*. at 71. Because it is unclear whether the ALJ considered this

11

evidence contrary to her holding of no limitations related to psychological impairments, the ALJ did not provide the requisite accurate and logical bridge between the evidence and her conclusion.

*Third*, the ALJ cited to Rebecca not taking any medications to treat depression or anxiety and her minimal mental health treatment as evidence that Rebecca's mental health condition was not as severe as the state agency psychologists opined. But before the ALJ could draw that inference, she had an obligation to consider possible reasons for the limited treatment. An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013); *see* SSR 16-3p, 2016 WL 1119029, at *8-9 (Mar. 16, 2016). Moreover, the Seventh Circuit has emphasized that "mental illness in general . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) (finding "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

The ALJ failed to consider whether Rebecca's depression and anxiety contributed to her minimal mental health treatment. Moreover, the record reflects that Rebecca had limited financial resources. (R. 71-72, 705, 821, 1232, 1234, 1236, 1239, 1240, 1248, 1251, 1306, 1347, 3303, 3304); *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) ("[T]he agency has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment."); SSR 16-3p, 2016 WL 1119029, at *9. Further, Rebecca explained at the hearing that she was prescribed amitriptyline for depression and pain but she stopped taking it because it was not working, which the ALJ did not acknowledge. (R. 20, 70); *see also id*. at 706 (Rebecca reporting "past trials of

12

Wellbutrin and Effexor for depression with good benefit"). Finally, on December 15, 2020, Rebecca underwent a Millon Behavioral Medicine Diagnostic assessment. As part of that assessment, the examiner concluded that Rebecca "may have trouble following a prescribed medication regimen because she is depressed. She may show increased signs of lethargy and fatigue and a sense of hopelessness about ever recovering her prior level of physical functioning. These factors are likely to contribute to her inability or lack of desire to follow medication instructions." *Id*. at 1245. The ALJ should have asked Rebecca about her mental health treatment history before concluding that it undermined the opinions of Drs. VanHoose and Yakin. *See Rusch v. Colvin*, 2016 WL 693201, at *12 (N.D. Ill. Feb. 22, 2016) (holding ALJ should have considered whether claimant's anxiety itself was a barrier to treatment before discounting claimant for not seeking treatment from a mental health professional). Moreover, the state agency psychologists were fully aware of the extent of Rebecca's mental health treatment, and nonetheless found her moderately limited in her mental work-related abilities with multiple mental RFC restrictions. (R. 95-96, 112-13). On remand, the ALJ shall consider possible explanations for the extent of Rebecca's mental health treatment before drawing any adverse inferences. The ALJ shall also explain why Rebecca's limited mental health treatment "provides a reasonable basis to discount the [state agency psychologists'] opinion[s]." *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019).

For these reasons, the Court finds that the ALJ's evaluation of the state agency psychologists' opinions is not supported by substantial evidence. This leaves the ALJ's decision not to include any non-exertional restrictions in her RFC assessment unsupported by the opinion

of any mental health professional.³ As a result, the Court is unable to determine the medical evidence on which the ALJ based her determination of Rebecca's mental work-related abilities.

Finally, the Court cannot find that the ALJ's error was harmless, and the Commissioner has not made a harmless-error argument. An ALJ's error may be harmless and not require remand if the court is "convinced that the ALJ would reach the same result on remand." *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). The ALJ's failure to properly explain her assessment of the combined effect of Rebecca's depression and anxiety with her other impairments is especially important here because her determination of non-disability was based on Rebecca's ability to perform her past work as a secretary, a skilled position. *See Moore v. Colvin*, 239 F.Supp.3d 845 861 (D. Del. March 8, 2017) ("The ALJ's failure to analyze in detail the effects of Moore's mental limitations on Moore's ability to work at steps four and five was particularly important in view of the ALJ's conclusion that Moore could perform her skilled past relevant work as a secretary."). "That is because even mild limitations in domains like concentration, persistence, or pace can impact a claimant's ability to work in skilled or semi-skilled positions." *Lawrence J. v. Saul*, 2020 WL 108428, at *3 (N.D. Ill. Jan. 9, 2020); *Cheryl v. Berryhill*, 2019 WL 339514, at *3 (N.D. Ill. Jan. 28, 2019). All of the skills, abilities, and work activities required by secretaries could be affected by even minimal limitations in the paragraph B criteria. *Dolly H. v. Kijakazi*, 2023 WL 6566603, at *8 (S.D.W. Va. Aug. 31, 2023). Rebecca identified some specific limitations in her ability to pay attention and concentrate, complete tasks, and understand instructions. (R. 276). "Because these functions are integral to performing the occupation of secretary, without a narrative

---

³ The ALJ also rejected the opinions of Rebecca's treating rheumatologist, Dr. David Mael, regarding her non-exertional deficits. (R. 32-33). Dr. Mael opined that Rebecca's experience of pain or other symptoms are severe enough to constantly interfere with her attention and concentration to perform even simple work tasks and she is incapable of even "low stress" jobs. *Id*. at 3521. Dr. Mael also opined that Rebecca would likely miss work more than four days per month. *Id*. at 3523.

14

explanation that addresses and reconciles the evidence regarding [Rebecca's] limitations related to her non-severe mental impairment and then logically creates a bridge to the RFC finding, the court cannot meaningfully review the ALJ's decision." *Dolly H.*, 2023 WL 6566603, at *8. The ALJ did not account for any of Rebecca's mental limitations in the hypotheticals posed to the VE, and thus, the VE did not consider whether Rebecca's mild limitations in all four areas of mental functioning would preclude her from performing her past skilled work. *Simon-Leveque v. Colvin*, 229 F.Supp.3d 778, 788 (N.D. Ill. Jan. 17, 2017) ("Because the ALJ did not account for all of Plaintiff's [mild] limitations in his questioning of the VE, it is unclear whether Plaintiff is indeed capable of performing her past relevant work as a brokerage clerk."). Therefore, the ALJ failed to build an accurate and logical bridge from the evidence to her conclusion that Rebecca can perform her past work as a secretary.

Though the ALJ did not discuss this in her decision, she did pose an alternative hypothetical to the VE, including, among other things, the additional limitations of capable of unskilled work, where the individual "could learn, understand and remember simple and detailed work instructions but should have a routine work environment, can make simple work related decisions and would be able to sustain necessary attention or concentration for these tasks in two hour increments throughout the typical work day." (R. 79). The VE responded that the hypothetical individual could not perform Rebecca's past work but could perform the jobs of callout operator and surveillance system monitor. *Id*. However, this testimony fails to bridge the gap in the ALJ's reasoning with respect to the mental RFC. The state agency psychologists, whose opinions the ALJ improperly discredited, opined that Rebecca was moderately limited in her ability to understand, remember, and carry out detailed work instructions. *Id*. at 102, 117. If a no detailed instructions limitation had been credited and then included in the RFC, the outcome might have

15

been different. Although the ALJ fashioned an alternative hypothetical which found that Rebecca is able to learn, understand, and remember detailed work instructions, that hypothetical does not render the gap in the ALJ's reasoning a harmless error. Therefore, on this record, the Court cannot say that accepting the state agency psychologists' opinions would not have resulted in a different finding regarding Rebecca's ability to work.

In sum, the ALJ's finding that Rebecca's mild mental limitations coupled with her physical impairments did not require non-exertional restrictions in the RFC is not supported by substantial evidence. On remand, the ALJ shall reevaluate Rebecca's RFC, considering the interaction of her many mental and physical problems on her ability to work, and explain the basis of her findings. The ALJ must provide a logical bridge between the evidence and her conclusions regarding Rebecca's mental RFC. If the ALJ does not believe Rebecca's mental impairments warrant non-exertional limitations in the RFC, she must explain why. *Milton B.*, 2023 WL 4134812, at *7. With the assistance of a VE, the ALJ shall then determine whether Rebecca can perform her past relevant work or any other jobs that exist in significant numbers.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [14] is granted in part and the Commissioner's Motion for Summary Judgment [17] is denied.

**SO ORDERED.**

Dated: March 7, 2024

                                            Sunil R. Harjani
                                            United States Magistrate Judge